Donald W. **COFFEY**, Appellant,

v.

Elizabeth M. **COFFEY**, Respondent.

No. 25745.

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

William B. Waters, Liberty, Gregory E. Hodges, Kansas City, for appellant.

David Lee Wells, North Kansas City, for respondent.

SWOFFORD, Judge.

The parties will be referred to herein as they were below.

Plaintiff filed his petition in the Circuit Court of Clay County, Missouri in two Counts. In Count I, he asked for a divorce from the defendant on the grounds of general indignities, and in Count II, he asked for an accounting of certain personal property held by the parties as joint tenants, and that one-half thereof be set over to him. The defendant by her answer contested his right to either a divorce or an accounting, but did not ask for any affirmative relief.

The plaintiff appeals from the judgment of the court below denying him a divorce or an accounting, and finding all issues for the defendant. While the plaintiff in his motion for new trial below urged that the court erred in refusing him a decree of divorce upon the evidence adduced, he has not briefed or argued this point upon appeal, and the judgment on Count I must, therefore, be affirmed.

The only matter for present determination is whether the court below erred in refusing to order an accounting of the personal property, as sought in Count II of plaintiff's petition.

It is plaintiff's position that he is entitled to such accounting because the defend-

ant wrongfully converted the property held by the parties as tenants by the entirety, and thus changed the nature of the ownership to that of tenants in common, and that he is therefor entitled to one-half thereof, to be determined by an accounting. Defendant, on the other hand, asserts that the court did not err in refusing the accounting because the divorce decree was denied and the parties are still man and wife.

Stated differently, the point for decision is whether or not under the facts and evidence in this particular case an accounting may be had between man and wife as to personal property held as tenants by the entirety, or is a divorce decree a necessary prerequisite to such an accounting?

As pertinent to this question, a brief review of the evidence is necessary.

The parties hereto were married October 11, 1933, and lived together until November 21, 1968, a period of over 35 years. No children were born of this marriage. Over the period of 35 years, both parties were gainfully employed for substantially all of the time, and through their joint efforts they acquired a home free from encumbrance and also certain personal property (here involved) consisting of a bank account, savings and loan deposits and government bonds, all of which were held in their joint names. There is no dispute between the parties that this personal property was held by them as tenants by the entirety.

On November 21, 1968, the defendant left the home and took up her residence elsewhere, and since said date and up to and including the trial date, December 9, 1970, has no longer lived with the plaintiff, and on the trial date had not seen him, according to her testimony, for about a year and a half. She filed an action for divorce against the plaintiff on November 25, 1968, based upon the grounds of general indignities, but thereafter dismissed said action.

During the last few years that the parties lived together, the evidence disclosed that their marital situation had progressively deteriorated. Some of the evidence upon this element of the case is summarized here, not as it reflects upon the divorce element of this case, but by reason of its importance as bearing upon the right to accounting and property interests.

The plaintiff testified that the defendant had an ungovernable temper, constantly quarreled and argued with him, falsely accused him of association with other women; upon one occasion, she threatened to kill him with a loaded revolver in hand, and that upon another occasion she struck him with a water pitcher, breaking his false teeth. Defendant admitted her threat with the revolver and that upon occasion she had struck the plaintiff, claiming however, that these actions were in self-defense. Upon another occasion, the defendant physically attacked a neighbor with whom she falsely accused her husband of improper conduct.

The defendant testified that the plaintiff drank in excess, was frequently intoxicated; had upon occasion struck and bruised her; that he had over a period of years engaged in improper association with a neighbor, and that his drinking and personal conduct had affected his health, resulted in several heart attacks and hospitalizations.

The defendant testified that after she left the home and the plaintiff on November 21, 1968, she took the jointly held funds of the parties, which consisted of approximately $5400.00 in a Baltimore Bank checking account; approximately $10,000.-00 in a Sentinel Savings and Loan account; and approximately $14,000.00 in government bonds.

She testified that the proceeds from the checking account she had put into two savings accounts in her own name, and had transferred the savings and loan account to her own name; that all of said funds had been left intact by her, as had the government bonds, and that she anticipated that some of these funds might be needed in the

future by the plaintiff for medical care, but that she had not transmitted any of the funds or the earnings therefrom to the plaintiff since her departure from the home in November, 1968.

The bank and savings and loan association records were not offered in evidence, nor an exact description of the registration of the government bonds made a part of the record. However, the parties throughout have treated this property as held by the parties initially as tenants by the entirety.

Such a tenancy can exist only between husband and wife and is based upon the fiction, having its source in the common law, that the husband and wife hold such property as one person. The essential characteristic of an estate by the entirety is that each spouse is seized of the whole or entity and not a share, moiety or divisible part. It is said that each is seized "per tout et non per my" or "by the whole and not by the moiety (half of anything)." Such ownership applies to both real and personal property.

In speaking of this type of an estate in Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S.W. 72, the Supreme Court said, l.c. 73:

"* * * It is one estate vested in two individuals who are by a fiction of law treated as one person, each being vested with entire estate. Neither can dispose of it or any part of it without the concurrence of the other, and in case of the death of either the other retains the estate. It differs from a joint tenancy where the survivor succeeds to the whole estate by right of the survivorship; in an estate by entireties the whole estate continues in the survivor. The estate remains the same as it was in the first place, except that there is only one tenant of the whole estate whereas before the death there were two."

See also: Greene v. Spitzer, 343 Mo. 751, 123 S.W.2d 57, 60.

Even if the parties had not treated the accounts and bonds, which are the subject matter of this suit, as an estate by the entirety, such could be presumed under the Missouri law, since the accounts and bonds were in both their names "jointly" and they were husband and wife.

In the Matter of the Estate of Jeffries, Mo.Sup., 427 S.W.2d 439, 444, it was held that joint accounts and deposits payable to husband and wife are presumed to be held in an estate by the entirety, regardless of statutes relating to joint bank deposits, and regardless of whether the husband or the wife, or both, furnished the money creating the account. In re Estate of O'Neal, Mo.Sup., 409 S.W.2d 85, 91; McIntyre v. McIntyre, Mo.Sup., 377 S.W.2d 421, 425; State Bank of Poplar Bluff v. Coleman, 241 Mo.App. 600, 240 S.W.2d 188, 189. We will proceed, therefore, upon the premise that the property here involved was held by the entirety.

Personal estates held by the entirety can be changed to other types of estates by consent, agreement or acquiescence, Cooper v. Freer, Mo.App., 385 S.W.2d 340, 345, but neither the husband nor the wife owning personalty by the entirety can dispose of the whole or any part thereof without the consent, agreement or acquiescence of the other. Leuzinger v. Merrill, Lynch, Pierce, Fenner & Smith, Mo.Sup. en Banc, 396 S.W.2d 570, 580, in which case it was said, l.c. 580:

"* * * One of the incidents of a tenancy by the entirety is that any act affecting the title to property thus held must be by joint act. * * *"

Zahner v. Voelker, Mo.App., 11 S.W.2d 63; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214; and cases collected Missouri Digest, Husband and Wife, ☞14(2, 9).

There is no contention in this case that the plaintiff-husband ever consented to, agreed with, or acquiesced in the act of the defendant-wife in the transfer of the deposits here involved from the estate by the

entirety to her sole name, nor the appropriation by her of the government bonds held by the entirety.

While the defendant in her answer to Count II of plaintiff's petition denied that the plaintiff had contributed to the accumulation of the funds which created this entirety estate, her testimony and that of the plaintiff agreed that he had made such contributions regularly and as a matter of family economics and agreement throughout the years of the marriage, and for the purpose of this decision, we can proceed upon the premise that this estate was created by the joint efforts of the parties.

Likewise, it is conceded by the parties in their briefs that the joinder of Count I for divorce with Count II for an accounting in plaintiff's petition was proper.

Even though such concession is here made by the parties, it is helpful toward solution of the ultimate decisive question before us to briefly review this area.

■ An action for divorce is sui generis, but is governed by equitable principles. Before the adoption of the new civil code in Missouri (1943), the divorce judge, even though he might be said to be sitting as a chancellor in equity, was limited in the relief he could grant to matters directly affecting the marital relationship. This harsh rule was modified and changed by the new Civil Code and judicially interpreted for the first time in the case of Fawkes v. Fawkes, Mo.App. (1947), 204 S.W.2d 132, an opinion of this court by Cave, P. J.

In the Fawkes case, the husband filed for divorce and the wife cross petitioned for separate maintenance. The plaintiff was denied a decree of divorce, but the trial court entered an award to the defendant for separate maintenance and child support, from which award the plaintiff appealed. It was contended in Fawkes that the action for separate maintenance, also sui generis but arising under a different statute, was not the proper subject matter for a cross petition in a divorce action, and that the trial court erred in overruling plaintiff's motion to dismiss such cross petition.

The court in Fawkes, after pointing out that the decisions prior to the new code would have required the dismissal of such cross petition, held that under the broad pleading provisions of the Code, the same could be maintained, and affirmed the judgment of the court below. Certiorari was granted to the Supreme Court and in State ex rel. Fawkes v. Bland en Banc, 357 Mo. 634, 210 S.W.2d 31, the Supreme Court in a unanimous decision approved the principles announced in the decision of this court.

The pertinent sections of the Code which changed the complexion of the law on this subject and destroyed the efficacy of prior decisions, as they come to us today, are:

"Section 452.040 (Divorce). Jurisdiction. The circuit court shall have jurisdiction in all cases of divorce and alimony or maintenance; and all such cases shall be tried by the court, *and the like process and proceedings shall be had in such causes as are had in other civil suits, * * *"* (Emphasis added)

"Section 509.060 (Pleadings). Joinder of Claims. The plaintiff in his petition or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party. * * *" Rule 55.07, Rules of Civil Procedure, V.A.M.R.

Later, so as to avoid any future difficulties with this problem in divorce actions, the Supreme Court of Missouri in 1959 adopted a new rule, not modeled after any existing statute, which provides as follows:

"Rule 88.08. Joinder of Claims. In a petition for divorce or separate maintenance, the provisions of these rules with respect to joinder of separate claims and causes of action shall be permitted."

After the decision in Fawkes, supra, the appellate courts of this state have held that it is proper to join either in a petition or cross claim in a divorce action claims for equitable relief. In Dallmeyer v. Dallmeyer, Mo.Sup., 274 S.W.2d 250, the joinder by the husband in his cross claim for divorce of a cause of action to establish a resulting trust in real and personal property was held to be proper; and in State ex rel. Stone v. Ferriss, Mo.Sup., en Banc, 369 S.W.2d 244, approval was given to a wife joining with her cross petition for divorce and request for custody of minor children a separate count in equity asking for a decree of custody and support for the minor children even in the event that a divorce decree was denied to either party.

The joinder in plaintiff's petition was proper and salutary and in keeping with the modern spirit of liberality in pleadings. The court below had the power and duty to adjudicate both counts of plaintiff's petition.

This brings into focus the decisive question for decision. Does the fact that plaintiff was denied a divorce on Count I of his petition destroy his right for equitable relief on Count II and, if not, was Count II properly ruled?

The plaintiff's interest in the property held in an estate by the entirety was and is not dependent upon his good conduct nor his right to a divorce nor can such interest be affected by his misconduct. McCarty v. McCarty, Mo.Sup., 300 S.W.2d 394, 402; Johns v. McNabb, Mo.Sup., 247 S.W.2d 640, 642; 41 C.J.S. Husband and Wife § 34, p. 461.

We have carefully reviewed cases cited in the briefs and other decisions, and have reached the conclusion that the fact that the court below denied plaintiff a divorce on Count I of his petition did not preclude the granting of relief on Count II of his petition, wherein he asked for an accounting and the setting off to him of his share of the entirety estate which had been sequestered by the defendant without his consent.

In the case of Builderback v. Builderback, 241 Mo.App. 508, 244 S.W.2d 377, plaintiff-wife filed for divorce. Defendant-husband filed a cross petition for divorce and for an accounting. The trial court denied both the plaintiff and the defendant a divorce decree, but found for the defendant on his plea for an accounting and set over a certain sum of money to him, which represented the proceeds of the sale of some property formerly owned by him, which funds had been appropriated or taken by his wife. It is true, as respondent here asserts in her brief, that the Builderback case did not involve an estate by the entirety but was more in the nature of an accounting for money had and received.

In affirming the action of the trial court and following the decisions in Fawkes v. Fawkes, supra, and State ex rel. Fawkes v. Bland, supra, the court held that the joinder of the suit for a divorce with an action for an accounting was proper, and that the trial court, even though denying the divorce, could proceed with the accounting and there said, 1.c. 379:

> "The trial court had the right to investigate the financial status between plaintiff and defendant, notwithstanding defendant's assertion that he did not want such accounting, unless plaintiff was granted a divorce, and the trial court had the undoubted right to enter upon such accounting, if it was satisfied from the evidence that defendant had suffered financially by the acts of plaintiff * * *"

In the case of Ray v. Ray, Mo.App., 336 S.W.2d 731, plaintiff-husband filed suit for divorce. Defendant-wife counterclaimed, wherein she prayed for an accounting, alleging that the plaintiff-husband had wrongly converted jointly owned property. The trial court granted a decree of divorce

to the plaintiff and also ruled in his favor upon the counterclaim in accounting. The wife appealed.

The evidence showed that the property had been accumulated through the joint efforts of the parties and was held as an estate by the entirety and that the same had been wrongfully converted by the husband in toto.

The court in Ray reviewed the previous authorities, which held that property owned by entirety could not be partitioned without consent of both spouses, but stated that this rule had been modified to permit one spouse to have an accounting for rents and profits from real estate held by the entirety or where husband and wife could be held to be joint adventurers, and that such a suit could be maintained by a wife for the protection or recovery of her separate property, and there said, l.c. 734:

"Since we have held (Smith v. Smith, supra, 300 S.W.2d 275) that the wife may now maintain any character of action for the protection or recovery of her separate property, it would seem impractical to say that she must await divorce and then bring another action for the protection of the interest which is hers in an entirety property. As to the objection based on public policy, it would appear that if the husband and wife are warring for the possession and use of entirety property the marriage schooner is already pretty well on the rocks. * * *"

The court then points out that the fiction of complete indivisible interests can be modified by agreement, acquiescence and consent, and that such can be done in the case of personal property by an informal act, and then says, l.c. 734:

" * * * If one of the parties takes the personal property to the complete denial of the other, he thereby in effect asserts that he denies the existence of an entirety title and has 'consented to or proposed' a destruction of the indivisible interests. In such a situation the spouse should have the option to accept and agree to such proposal of destruction and proceed to have her interests protected. *We think it now should be held that a spouse may maintain an action for accounting after a conversion of personal property owned by the entirety."* (Emphasis added)

The court then reviewed the evidence, which established the joint accumulation of the funds in question, and said, l.c. 737, 738:

" * * * It would be unjust and inequitable to permit either of the parties to walk away from the stricken marriage with all the assets which their joint efforts have accumulated. They should be divided equally. If a court of equity decides that one party has unjustly suffered financially from the acts of the other party to the marriage, it can enter into an accounting. Builderback v. Builderback, supra, 244 S.W.2d 377. This applies to all of the assets which had not been previously, by express or implied consent, given to one or the other."

The court then cites with approval and adopts the ruling in Kaufmann v. Kaufmann, 166 Pa.Super. 6, 70 A.2d 481, and Berhalter v. Berhalter, 315 Pa. 225, 173 A. 172, quoting from the latter case at l.c. 738 of 336 S.W.2d:

" * * * 'The fund withdrawn is still subject to the legal status of the estate, and it has stamped on it in the hands of the one who withdrew it all the elements of a trust. Where both husband and wife have power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto.' "

In the case of Berhalter v. Berhalter, 315 Pa. 225, 173 A. 172, the parties had accumulated through joint efforts a savings account in their joint names. The wife withdrew certain of these funds with the intent of leaving her husband and returning to her home in France. The husband brought this suit in equity for an accounting and the court below directed that one-half of the fund be transferred to the husband. It was from this order that the appeal was taken.

In affirming the judgment as to the division of the funds, after stating the principle above quoted by our court in Ray v. Ray, supra, the court there said, l.c. 173:

"When the wife in her own behalf and for her own use withdrew part of the fund from the bank, this action was tantamount to an offer to her husband to destroy the estate by entirety. * * * [T]his constituted in law an election on her part to divide the fund. In this case, when appellee (husband) in a request for a conclusion of law asked for a division of the fund, this constituted an acquiescence in appellant's offer or election to divide the fund. In other words, by the act of the parties they agreed to divide the property subject to the estate by entirety. * * *"

It should be noted that no divorce decree was asked or entered in Berhalter.

With equal logic it can be here said that when Mrs. Coffey withdrew the entirety funds, it was an offer on her part to her husband to destroy the estate by entirety and his filing Count II of his petition was an acceptance of such offer. The court's ruling on Count I with reference to the divorce is irrelevant now.

The record before us is not persuasive that in ordering an accounting and division of this property the trial or this court would, as asserted by the respondent, destroy the social or economic tranquility of the community or the domestic tranquility of the parties. The "oneness" which is the desired and happy state of husband and wife has already been unfortunately and tragically destroyed by them. There were no children involved and accordingly, no social considerations of any real weight in equity. On the contrary, equity cries out that the wife should not be permitted to appropriate and place under her complete and uncontrolled dominion, to be used for purposes lying within her sole judgment (or, indeed, her whim or caprice) the total joint accumulations of both her and her husband for a period of 33 years.

■ The plaintiff here urges for the first time that the corpus of the property involved be impressed with a constructive trust. Equity will, under proper circumstances, impose a constructive trust upon property over which someone has wrongfully assumed control or which has been wrongfully disposed of and such person or he who has possession thereof becomes a trustee ex maleficio: Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584; Schroer v. Schroer, Mo.Sup., 248 S.W.2d 617; Lawrence v. Cameron Savings and Loan Ass'n, Mo.Sup., 395 S.W.2d 452; Radford v. Radford, Mo.Sup., 388 S.W.2d 33.

In Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, a wife sought the return of the proceeds of a joint (husband and wife) bank account which her husband had withdrawn without her consent and redeposited in his name and that of his relatives, jointly. In holding that she was entitled to the return of all the funds (her husband was then deceased) the court held that where such jointly held or entirety funds were so withdrawn, l.c. 218:

" * * * In such case the joint tenancy is not destroyed, the proceeds retain their character as joint property wherever they may be traced, and a constructive trust may be impressed thereon."

■ We agree with the rule stated in Feltz v. Pavlik and the other authorities cited, supra, that an equitable constructive trust may be impressed, in the discretion of

the chancellor, upon the Coffey entirety property. Since this cause cannot be finally decided here but must be remanded, the plaintiff may wish to seek this type of equitable relief and should be freely permitted to make such request in connection with the accounting.

Further considerations which prevent final adjudication here are: over a year and a half has passed since this case was tried and the character, amount and possession of these assets may have changed; the court below may find it necessary to appoint a court-controlled trustee; or grant injunctive or other appropriate equitable relief, after full hearing and accounting.

The judgment as to Count I is affirmed.

The judgment as to Count II is reversed and the cause remanded for further proceedings, including accounting, in accordance with this decision.

It is so ordered.

All concur.